UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

Kevin Weatherspoon,

              Plaintiff,              Case No. 1:19-cv-1101

v.                                    Honorable Paul L. Maloney

Unknown Gainer et al.,

              Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF)

in Manistee, Manistee County, Michigan. Plaintiff sues Sergeant Unknown Gainer and Corrections Officer Unknown Mikolczyic.

Plaintiff alleges that on August 3, 2019, he was reviewed on two misconduct tickets and two notices of intent to conduct an administrative hearing. The first misconduct stated that during a review of the phone system on August 3, 2019, it was discovered that Inmate Walker had placed a phone call to 248-805-2680 on July 19, 2019, using the yard phone. A review of the camera in that area showed Walker placing the call and then handing Plaintiff the phone receiver. Plaintiff was clearly identified as the prisoner who was talking on the phone based on the contents of the conversation, prior phone monitoring, and the ECF video system. Because Plaintiff did not have authorization to use another inmate's PIN number, he was charged with destruction or misuse of property. (ECF No. 1, PageID.4.)

The second misconduct stated that during the same review of the phone system, it was also discovered that on August 1, 2019, Inmate Phillips-Addis placed a phone call to 248-805-2680 and then set the phone receiver down. At that point, Plaintiff walked over, picked up the phone receiver, and began talking on the phone. Plaintiff was positively identified as being the prisoner talking on the phone based on the contents of the conversation, prior phone monitoring and the ECF video system. Again, because Plaintiff did not have authorization to use another inmate's PIN number, he was charged with destruction or misuse of property. (*Id.*)

The same facts are detailed in the notices of intent to conduct an administrative hearing. (*Id.* at PageID.5.) Plaintiff alleges that on August 7, 2019, an administrative hearing was held on the notices of intent, during which Hearings Officer Erway dismissed the notices of intent because they were written on the same day for offenses occurring on different dates.

On August 8, 2019, Defendant Gainer wrote a notice of intent to conduct an administrative hearing, stating that Inmate McCray's aunt, Ms. Maze, had contacted the prison and complained that other prisoners from ECF had telephoned her and extorted money from her. Defendant Gainer stated that he completed an investigation into the situation on August 7, 2019, which showed that five telephone calls had been placed to Ms. Maze's phone number on August 1, 2019, by inmates Williams, Phillips-Addis, and Plaintiff using Phillips-Addis phone access. The three inmates successfully extorted $140.00 from Ms. Maze. Defendant Gainer further reported that Plaintiff's mother, who's phone number was 248-805-2680 confirmed that she was the recipient of the cash. The three inmates were clearly identified as being the prisoners on the phone based on prior phone monitoring and the ECF video system. A copy of the phone calls were attached to the notice of intent. (*Id.*, PageID.6.) Plaintiff states that Defendant Gainer made a request for Plaintiff to be placed on a permanent phone restriction. (*Id.*)

Plaintiff states that he contacted his mother, who denied speaking to anyone at ECF about receiving money from a person named Maze. Plaintiff filed grievances and formal complaints asserting that Defendant Gainer had falsified information in the notice of intent in order to retaliate against Plaintiff for getting the previous notice of intent dismissed. Plaintiff alleges that on August 11, 2019, Defendant Mikolczyic harassed him by implying that that staff work together, and by stating that "when you come after one you come after all." (*Id.* at PageID.2.)

On August 15, 2019, Plaintiff waived his right to a hearing on the misconduct tickets and pleaded guilty to both. Plaintiff received fourteen days loss of privileges. On August 19, 2019, Defendant Gainer improperly attempted to review a notice of intent with Plaintiff that he himself had written, and threatened Plaintiff with further harassment if he did not conform with rules. Plaintiff was subsequently transferred to KCF. Plaintiff believes that the transfer was in

retaliation for his actions in filing grievances and complaints regarding the allegedly false information in the notice of intent.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory, punitive, and nominal damages, as well as declaratory and injunctive relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80

(6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The allegations asserted in Plaintiff's complaint do not rise to the level of an Eighth Amendment violation.

## IV. Due process

Plaintiff makes a conclusory assertion that Defendants violated his due process rights under the Fourteenth Amendment. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff claims that his misconduct convictions resulted in fourteen days' loss of privileges. However, Plaintiff admit pleading guilty to the misconducts and does not appear to be challenging the process with regard to these convictions. In addition, the Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Therefore, Plaintiff's misconduct convictions did not violate his due process rights.

As noted above, Plaintiff states that he received three notices of intent to conduct an administrative hearing. Plaintiff does not specify who wrote the first two notices of intent, but he states that they were dismissed due to a procedural error on the part of the reporting officer.

Therefore, it is clear that Plaintiff received due process of law with regard to the first two notices of intent.

The third notice of intent, written by Defendant Gainer on August 8, 2019, involved an extortion plot by Plaintiff and two other inmates and included a request for a permanent phone restriction against Plaintiff. Plaintiff asserts that Defendant Gainer lied in the notice of intent. However, Plaintiff does not allege whether he received a hearing on the notice of intent, or whether he was sanctioned in any manner as a result of the notice of intent. The only allegations Plaintiff makes about the time following his receipt of the third notice of intent is that he was transferred from ECF to KCF. Prisoners do not have a liberty interest in remaining at a particular prison facility, and they have no justifiable expectation that they will remain at a particular prison unless found guilty of a misconduct. *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). Because Plaintiff fails to allege any deprivations that implicate due process, his Fourteenth Amendment claims are properly dismissed.

## V. Retaliation

Finally, Plaintiff asserts that his transfer was motivated by a desire to retaliate against him for successfully having his first two notices of intent dismissed. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See*

*Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff cannot show that his transfer to KCF was an adverse action taken against him for having two of his notices of intent dismissed. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Plaintiff's transfer was from one level II/IV facility to a level I/II facility.[1] Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer.

Nor does Plaintiff allege facts showing that the transfer was actually motivated by a desire to retaliate against him. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

Plaintiff's assertion of retaliatory motive is completely conclusory. As noted above, Plaintiff alleges that he received a notice of intent from Defendant Gainer and that on some

---

[1] The Court notes that Oaks Correctional Facility (ECF) is a level II/IV facility, while KCF houses level I and II prisoners. *See* https://www.michigan.gov/corrections/0,4551,7-119--55689--,00.html and https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5164--,00.html.

9

later date, which Plaintiff does not specify, he was transferred to KCF. Plaintiff does not state that Defendant Gainer was involved in the decision to have him transferred, or that the transfer was related to the notice of intent in any way. Even if Defendant Gainer had made any retaliatory statements, which Plaintiff does not allege, a defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith*, 250 F.3d at 1038; *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999). Because the facts alleged by Plaintiff in his complaint fail to support a First Amendment retaliation claim, this claim is properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: March 10, 2020         /s/ Paul L. Maloney
                              Paul L. Maloney
                              United States District Judge